UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

SONYA TURNER, ET AL.

VERSUS

LARRY TALBERT, ET AL.

CIVIL ACTION

NO. 04-450-JJB

## RULING ON MOTION TO CERTIFY CLASS

Plaintiffs, Sonya Turner, Vena Cormier, Wesley J. Nixon, Julie Constance, Charlotte Jourdan, Angie Malone, and John Shipman, bring this motion seeking class certification. (Doc. 37). Defendant, Pan American Life Insurance Company ("Pan American"), has filed an opposition. (Doc. 45). Plaintiffs have filed a reply. (Doc. 46). This Court's jurisdiction exists pursuant to 28 U.S.C. § 1331 *et seq*. Oral argument with respect to this motion is not necessary.

## Background

Plaintiffs were participants in a defined contribution 401(k) savings plan ("the Plan") offered through their employer, Progix, Inc. They allege that Jimmy Williamson, the named trustee and fiduciary of the ERISA-governed Plan, "either stopped transmitting the employee contributions, or failed to insure the employee contributions were being transmitted to the plan."[1] Pan American executed an "Administrative Service Agreement" with Progix whereby Pan American would provide "nondiscretionary, ministerial administrative services"[2] for the Plan. Despite the fact that the Service Agreement set forth that Pan American would not be "characterized as a fiduciary with

---

[1] Amended complaint, doc. 8, ¶ IX.
[2] Administrative Service Agreement, Exhibit A, doc. 37-4, page 3.

respect to the Plan,"[3] plaintiffs allege that Pan American engaged in discretionary acts which conferred fiduciary status upon it.[4] Plaintiffs assert that Pan American breached its fiduciary duty to the Plan when it failed to notify the plaintiffs that their contributions were not being forwarded to the Plan and made a unilateral decision freeze the Plan assets, thus preventing plaintiffs "from withdrawing their money, reinvesting their money, or protecting their investments from loses in the stock market."[5]

Plaintiffs move this Court to certify a class under Federal Rule of Civil Procedure 23(a) and (b)(3) and seek to represent

> [A]ll employees/participants in the Plan who were damaged and/or suffered losses as a result of Williamson's failure to either transmit the employee contributions to the plan or to take any efforts to insure their transmission to the Plan and by Pan Am's failure to notify Named Plaintiffs and similarly situated persons their Plan contributions were not being forwarded to the Plan, and by Pan Am's action to freeze all of the assets of the Plan which caused severe damage to Named Plaintiffs and all similarly situated persons.[6]

## **Analysis**

"The party seeking certification bears the burden of establishing *all* requirements of Rule 23 have been satisfied."[7] Under FRCP 23(a)

---

[3] *Id*.
[4] Specifically, plaintiffs assert in their memorandum in support of class certification:
> Fiduciary status is defined "in functional terms of control and authority over the plan." Plaintiffs contend that in deciding to freeze plan assets, Pan American exceeded the administrative duties in its contract and exercised the sort of discretionary action that "is the benchmark for fiduciary status under ERISA." Further, because ERISA imposes fiduciary obligations on anyone that "deals with plan assets," Pan American's actions in failing to safeguard the Progix plan assets once it realized that irregularities were occurring also supports its fiduciary status.

Doc. 37-2, page 5 (internal citations omitted).
[5] Amended complaint, doc. 8, ¶ XIII.
[6] *Id*. at ¶ XVI.
[7] Unger v. Amedisys, Inc., 401 F.3d 316, 320 (5th Cir. 2005).

2

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

In addition to satisfying the rule 23(a) prerequisites, for a class to be certified under 23(b)(3), this Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[8]

**Numerosity**

Ordinarily, "a plaintiff must…demonstrate some evidence or reasonable estimate of the number of purported class members."[9] In *Mullen v. Treasure Chest Casino, LLC*, the Fifth Circuit found a class with between 100 and 150 members "within the range that generally satisfies the numerosity requirement."[10] However, the "proper focus…is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors."[11]

Plaintiffs explain that while "the exact number of individuals who invested in the Progix plan changed over time…the number of participants stood at 207 in 2001, falling

---

[8] FRCP 23(b)(3).
[9] Zeidman v. J. Ray McDermott & Co., 651 F.2d 1030, 1038 (5th Cir. 1981).
[10] 186 F.3d 620, 624 (5th Cir. 1999).
[11] Zeidman v. J. Ray McDermott & Co., 651 F.2d 1030, 1038 (5th Cir. 1981). The relevant factors include "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Id*.

to no fewer than 81 on December 31, 2002...."[12] Plaintiffs argue that many class members' claims will be small, "with many too small to justify litigation"[13] and that former Progix employees are now dispersed throughout Louisiana and other states.[14] This Court agrees with plaintiffs that given the number of individuals who invested in the Progix plan, the presence of some small claims, and the geographical dispersion of potential class members, joinder of the potential class members would be impracticable. Thus, this Court finds the numerosity requirement satisfied.

**Commonality**

"To demonstrate commonality, Plaintiffs must allege that there exist 'questions of law or fact common to the class.'"[15] "The interests and claims of the various plaintiffs need not be identical. Rather, the commonality test is met when there is 'at least one issue whose resolution will affect all or a significant number of the putative class members.'"[16] Given this undemanding test, "the fact that some of the Plaintiffs may have different claims, or claims that may require some individualized analysis, is not fatal to commonality."[17]

Plaintiffs correctly point out many common issues, including whether Pan American owed a fiduciary duty, the nature and scope of that duty, whether and under what circumstances a freeze of the Plan's assets occurred, and the alternative

---

[12] Doc. 37-2, page 7.
[13] Doc. 46, page 3.
[14] *Id*.
[15] James v. City of Dallas, Tex., 254 F.3d 551, 570 (5th Cir. 2001).
[16] Forbush v. J.C. Penney Co., Inc., 994 F.2d 1101, 1106 (5th Cir. 1993) (quoting Stewart v. Winter, 669 F.2d 328, 335 (5th Cir. 1982)).
[17] James v. City of Dallas, Tex., 254 F.3d 551, 570 (5th Cir. 2001).

investments options available to Plan participants.[18] Considering these common questions of fact and law, this Court finds that the requirement of commonality is met.

**Typicality**

Like commonality, the test for typicality "is not demanding."[19] "'[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality."[20]

Pan American argues that plaintiffs cannot meet the typicality requirement because the proof necessary to prove any named plaintiff's claim is not the same as the proof that would be required to prove another class member's claim.[21] Pan American argues that "the premise of the typicality requirement is, 'as goes the claim of the named plaintiff, so go the claims of the class.'"[22] While plaintiffs argue that "[e]ach claim…depends at its core on the notion that Pan American improperly froze each plan account,"[23] Pan American argues that

> [T]he named Plaintiffs' 401(k) account statements and deposition testimony all reveal, as common sense dictates, that the named Plaintiffs invested their accounts differently and with varying degrees of activity….The variety in the individual investment strategies, allocations and activity is significant because it goes to the existence and extent of each participant's claims, if any, as a result of Pan-American's alleged conduct. Each class member would have to show, based on his own or her own investment strategy, allocations

---

[18] Doc. 37-2, page 8.
[19] James v. City of Dallas, Tex., 254 F.3d 551, 571 (5th Cir. 2001).
[20] *Id*. (quoting 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.24[4] (3d ed. 2000)).
[21] Pan American cites *In re South Central States Bakery Products Antitrust Litigation*, 86 F.R.D. 407, 416 (M.D. La. 1980) in which the court noted that "[o]ne court has stated the typicality test under Rule 23(a)(3) as requiring that 'in the course of proving its own claim (representative) plaintiff must also prove the claims of the other members of the class." *Id*. (quoting Amswiss International Corp. v. Heublein, Inc., 69 F.R.D. 663, 667 (N.D. Ga. 1975)).
[22] Doc. 45, page 25 (quoting Sprague v. General Motors Corp., 133 F.3d 388, 399 (6th Cir. 1998)).
[23] Doc. 46, page 4.

5

>and desired changes, that they have been injured by Pan-American's alleged conduct. Obviously, no named Plaintiff's investment history can be used to show **anything** about any other participant's account activity, alleged losses or claims. Accordingly, proof of the named Plaintiffs' claims will not prove the claims of absent putative class members.[24]

Thus, Pan American argues that although common issues exist as to whether a freeze occurred, individualized inquiry regarding whether a participant was injured by the alleged freeze defeats typicality. This Court agrees that individual inquiry will be necessary to determine a putative class member's damages, if any, caused by the alleged freeze. However, the factual differences do not in this instance defeat typicality of the named Plaintiffs' claims. The plaintiffs seek to rely on one legal theory and one alleged course of conduct – that Pan American, by exercising a degree of discretion with regard to the Plan, owed a fiduciary duty to the members of the Plan and breached that fiduciary duty when it froze Plan assets. Therefore, this Court finds that Plaintiffs have shown their claims to be typical of the class they seek to certify.

**Adequacy**

>As the Fifth Circuit has explained:

>>We have identified a "generic standard" for the adequacy requirement, noting that "the class representatives [must] possess a sufficient level of knowledge and understanding to be capable of 'controlling' or 'prosecuting' the litigation."…The "long-established standard" for the adequacy determination…requires "'an inquiry into [1] the zeal and competence of the representative[s'] counsel and…[2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees[.]" In addition to determining the proposed class counsel's zeal and competence and the proposed class representative's willingness and ability, the district court's "adequacy inquiry also

---

[24] Doc. 45, pages 26-27.

> 'serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent.'"[25]

Plaintiffs tell this Court that the firm representing them has handled class actions in the past and that lead counsel in this case, Mr. Staub, Jr., "has handled countless ERISA matters in his 20 years of practice."[26] Further, plaintiffs state that the firm is familiar with the claims in this case, "having investigated them extensively during the bankruptcy proceeding of Larry Talbert."[27] Pan American does not address or dispute the adequacy of the putative class members' counsel. Given the experience of counsel with class actions, ERISA, and underlying facts related to this case, this Court finds the putative class counsel adequate.

While Pan American does not dispute the adequacy of putative class counsel, it does take issue with the adequacy of the proposed class representatives. First, as to John Shipman, plaintiffs concede that he "has developed serious health problems and will not be able to act as a class representative."[28] Thus, this Court will not consider Mr. Shipman as a potential class representative.

Pan American argues that the deposition testimony of Julie Constance and Wesley Nixon show that they believe "their claims against Pan-American stem from an un-alleged 'miscellaneous debit' that occurred within their 401(k) accounts in 2001."[29] While both Ms. Constance and Mr. Nixon mention miscellaneous debits in their

---

[25] Feder v. Electronic Data Systems Corp., 429 F.3d 125, 129-130 (5th Cir. 2005)(internal citations omitted). *See also* Berger v. Compaq Computer Corp., 257 F.3d 475, 482-483 (5th Cir. 2001).
[26] Doc. 37-2, page 11.
[27] *Id*. According to plaintiffs, Mr. Talbert, the president of Progix, Inc., was the individual who failed to forward designated amounts to the Progix 401(k) plan.
[28] Doc. 46, page 6 n. 12.
[29] Doc. 45, page 30.

deposition testimony, both also indicate they believe Pan American improperly froze Plan assets.

Mr. Nixon does state that his claim against Pan American involves a miscellaneous debit. However, when asked again about his specific claims against Pan American, he also states:

> [W]hen the – account was frozen, nobody could touch their money, nobody could move their money to, say, a safer fund, or they couldn't take it out to move it into some other funds – other 401 plans. It was kind of like we were just in no man's land. We were just hung out to dry.[30]

Clearly, Mr. Nixon understands his claims against Pan American to include the allegation that defendant improperly froze the Plan's assets. This Court finds Mr. Nixon to be an adequate putative class representative.

Ms. Constance's deposition testimony regarding her claims against Pan American is more difficult to interpret. She states that her claim against Pan American stems from an unauthorized debt and admits that she does not see any such allegation in the complaint; however, she also mentions that "at one point our funds got frozen, and we couldn't do anything with it, and without an explanation."[31] Although Ms. Constance mentions the alleged freeze, she does appear to be the least knowledgeable about the specific claims against Pan American as set forth in the complaint. While she refers to the alleged freeze, she does not indicate that her complaint against Pan American stems from that freeze. Instead, she believes her claim against Pan American to be based on an unauthorized debit which she admits is not included the complaint. Plaintiffs argue that they "are not expected to know with legal precision the nature of

---

[30] Doc. 38-11, page 6.
[31] Doc. 38-12, page 5.

8

their claims,"[32] and this Court agrees. However, they must know enough to manage or control this litigation. As such, this Court finds Ms. Constance to be an inadequate class representative.

In addition to finding that each of the named Plaintiffs in the putative class, with the exception of Ms. Constance, understand their claims against Pan American sufficiently, this Court also finds that each indicated a willingness to take an active role in this litigation should a class be certified.[33]

Finally, Pan American argues that the named Plaintiffs would be inadequate class representatives because, "there is an inherent conflict of interest between the…named parties and the absent class members."[34] Pan American cites *Langbecker v. Electronic Data Systems, Corp.*, in which the Fifth Circuit held that a conflict of interest between putative class members made certification inappropriate.[35] There, a putative class claimed a breach of fiduciary duty based on value changes in the company's stock in which they were invested. The *Langbecker* Court noted that despite this value change, some members of the putative class continued to invest in the stock and some actually made money on their stock investments. The court stated that the "intraclass conflict is exacerbated because Appellants seek injunctive relief that would dissolve the [stock fund]; the Fund cannot be partially shut down for the litigating

---

[32] Doc. 46, page 7 n. 14.
[33] *See* Doc. 37-2, page 10 n. 38 (compiling deposition testimony of each named Plaintiff, with the exception of Mr. Shipman, showing that each was willing to represent unnamed class members and participate fully with this suit).
[34] Doc. 45, page 29.
[35] 476 F.3d 299 (5th Cir. 2007). *See also* Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 626 (5th Cir. 1999) (finding that differences between named plaintiffs and class members will render the named plaintiffs inadequate representatives "only if those differences create conflicts between the names plaintiffs' interest and the class members' interests.").

Plaintiffs and remain open for absent class members who desire this investment option."[36]

Here, named Plaintiffs seek certification of a class of individuals who were all damaged by the alleged freeze – the class would thus not present the same sort of intraclass conflict highlighted in *Langbecker*. Presumably, the class would not include individuals who believe they benefited from Pan American's actions. Thus, this Court finds the putative class in this case distinguishable from that discussed in *Langbecker*. Having found no conflict of interest between the putative class members or the named Plaintiffs, this Court finds the named Plaintiffs, with the exception of Mr. Shipman and Ms. Constance, to be adequate class representatives for the putative class.

**Predominance and Superiority**

Having found the putative class can meet the requirements of Rule 23(a), this Court must now determine whether the class can also meet the requirements of 23(b). Plaintiffs seek certification only under 23(b)(3). To certify a class on this basis, this Court must find that questions of law or fact common to the members predominate over any questions affecting individual members and that a class action is superior to other methods of adjudication. As the Fifth Circuit has explained:

> The predominance inquiry is "more demanding that the commonality requirement of Rule 23(a)" and requires courts "to consider how a trial on the merits would be conducted if a class were certified." Additionally, the superiority analysis "requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case."[37]

---

[36] 476 F.3d 299, 315 (5th Cir. 2007). Plaintiffs in this case assert that after the freeze, Plan assets were transferred to Regions Bank. Plaintiffs seek the value, including interest, of employee and employer contributions. *See* Amended Complaint, doc. 8, ¶XXI. They do not seek injunctive relief similar to that sought by the plaintiffs in *Langbecker*.
[37] Maldonado v. Ochsner Clinic Foundation, 493 F.3d 521, 525 (5th Cir. 2007). (internal citations omitted).

As noted by this Court in relation to commonality, if certified, common questions of law and fact regarding the existence of Pan American's alleged fiduciary duty and the freeze of Plan assets would have to be determined. Additionally, plaintiffs note that the question "of whether Pan American should have done more to safeguard plan assets, especially after realizing that irregularities were occurring in Progix 401(k) deposits, is also common."[38] Pan American argues in opposition that proof that a class member was injured by Pan American's alleged actions and the amount of that damage will require individualized determinations.

Pan American contends that in order to prove an individual class member was injured by Pan American:

> First, Plaintiffs must establish what each participants' investment allocations were prior to August 2002. Next, they must prove that each participant tried to change his or her allocations during the time of the purported "freeze" – proof that can be elicited only through testimony or documentation specific to individual participants. Next, Plaintiffs must prove that, for each participant who wanted to change his or her allocations, Pan-American refused to alter the allocations. Next, Plaintiffs must establish *how* each participant desired to change the allocations – in other words, what alternative investments each participant wanted. Finally, Plaintiffs must show that the alternative investments the participants were allegedly denied the opportunity to make would have provided *better* returns than they actually received.[39]

In replying to Pan American's arguments as to typicality, plaintiffs state that it "is undoubtedly true" that the named Plaintiffs invested their accounts differently and with

---

[38] Doc. 37-2, page 12.
[39] Doc. 45, page 33.

varying degrees of activity.[40] However, plaintiffs contend that such differences are "irrelevant."[41] Despite plaintiffs' contention, it seems to this Court that a putative class member's past investment behavior is relevant to a determination of whether that member would have changed his or her investment options during the alleged freeze.

While plaintiffs acknowledge that "[s]ome plan participants, unlike the representative plaintiffs and the absent members of the proposed class, may have ignored the declining balances in their plan investments, and may have had no desire to move plan assets or withdraw them,"[42] they argue that the "mere fact that one participant did not attempt to transfer or withdraw funds is irrelevant if that participant can demonstrate that the reason the participant did not try to do so was that the participant was aware of that the asset freeze had been implemented by Pan American."[43] While this may be the case, such a showing would also require an individualized factual determination. Indeed, it seems that Pan American is correct that under plaintiffs' proposed class definition, which only includes individuals "who were damaged and/or suffered losses as a result of" Pan American's alleged actions,[44] establishing who should be included as a member of the class would itself require individual determinations. As Plaintiff contends when replying to Pan American's arguments regarding numerosity:

> [T]he only way to determine the number of absent class members (at least at this stage) would have been to depose each absent class member to determine if, like the named plaintiffs, they were affected

---

[40] Doc. 46, page 4.
[41] *Id*.
[42] *Id*.
[43] *Id*. at 5.
[44] Amended Complaint, doc. 8, ¶ XVI.

> by Pan American's actions; this would defeat the very efficiencies class treatment is designed to foster.[45]

In addition to individualized issues regarding membership in the class in the first instance, this Court agrees that, "determining the injuries of Plan participants would require individualized examinations of their…contributions to and participation in the Plan, and extensive damages calculations for each participant."[46]

As well as the individualized issue of a class member's injury (and by the same token inclusion in the class), Pan American also asserts that individual damages in this case preclude class certification. Although some courts have certified classes despite the need for individual damage determinations, in those cases, damages were suitable to calculation by "mathematical or formulaic calculation."[47] Plaintiffs argue that the amount, date, and type of investment made by a particular putative class member is easily proven by Pan American's records and that "the damage calculations will largely consist of determining the losses the few defined funds in the Progix plan sustained during the period of time the freeze was in effect, and the alternative investment returns available had the funds been unfrozen."[48] While plaintiffs assert that "the damage calculations in this case will not be unduly troublesome,"[49] they do not propose a simple method of calculating damages. It seems to this Court that in order to determine a

---

[45] Doc. 46, page 2.
[46] Ned-Sthran v. Methodist Hospitals of Dallas, 2008 WL 5420601 (N.D. Tex. Nov. 25, 2008).
[47] *See e.g.* Bell Atlantic Corp. v. AT&T Corp., 339 F.3d 294, 306 (5th Cir. 2003) ("courts, therefore, have certified classes even in light of the need for individualized calculations of damages. Class treatment, however, may not be suitable where the calculation of damages is not susceptible to a mathematical or formulaic calculation, or where the formula by which the parties propose to calculate individual damages is clearly inadequate."); Steering Committee v. Exxon Mobil Corp., 461 F.3d 598, 601 (5th Cir. 2006) ("where individual damages cannot be determined by reference to a mathematical or formulaic calculation, the damages issue may predominate over any common issues shared by the class.").
[48] Doc. 46, page 8.
[49] *Id*.

particular class member's damages, individualized proof of what type of fund that class member would have invested in during the freeze would be necessary. Such an individualized determination does not lend itself to a mathematical or formulaic damages calculation. As the Fifth Circuit has noted, class certification is inappropriate when "damage claims 'focus almost entirely on facts and issues specific to individuals rather than the class as a whole,' [because] the potential exists that the class action may 'degenerate in practice into multiple lawsuits separately tried.'"[50]

Although the court believes that, if not certified, determination of Pan American's alleged fiduciary duty and the circumstances surrounding the alleged freeze of plan assets would constitute "significant part of the individual cases"[51] we are not convinced that, "[t]he common issues in this case…are not only significant but also pivotal."[52] Thus, this Court finds that common issues of fact and law do not predominate individual issues and thus class certification under 23(b)(3) is not appropriate.[53]

---

[50] O'Sullivan v. Countrywide Home Loans, 319 F.3d 732, 744 (5th Cir. 2003).
[51] Jenkins v. Raymark Industries, Inc., 728 F.2d 468, 472 (5th Cir. 1986).
[52] Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 626 (5th Cir. 1999).
[53] Having found individual issues predominate common issues, this Court also finds that a class action would not be the superior method for adjudicating this controversy. This Court finds the (b)(3) superiority requirement not met because of the likely difficulties in managing this litigation as a class action. This Court agrees with Pan American that "'[w]here, as here, individualized inquiry is required to establish the substantive elements of the class members' claims and the amount of damages, if any suffered by each class member, such determinations have been found to 'impose an excessive managerial burden upon the [trial] court.'" Doc. 45, page 36 (quoting Zimmerman v. Bell, 800 F.2d 386, 390 (4th Cir. 1986)).

## **Conclusion**

For the reasons discussed above, this Court DENIES plaintiffs' motion for certification. (Doc. 37).

Signed in Baton Rouge, Louisiana, on June 15, 2009.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**