UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

SONYA TURNER, ET AL.

VERSUS

LARRY TALBERT, ET AL.

CIVIL ACTION

NO. 04-450-JJB

### RULING ON MOTION FOR RECONSIDERATION

Before the court is plaintiffs' motion for reconsideration of this Court's June 15, 2009 ruling denying their motion for class certification. Doc. 51. Defendant, Pan American Life Insurance Company ("Pan American"), has filed a response in opposition. Doc. 53. This Court's jurisdiction exists pursuant to 28 U.S.C. § 1331 *et seq*. Oral argument with respect to this motion is not necessary.

### Background

Plaintiffs were participants in a defined contribution[1] 401(k) savings plan ("the Plan") offered through their employer, Progix, Inc. They allege that Jimmy Williamson, the named trustee and fiduciary of the ERISA-governed Plan, "either stopped transmitting the employee contributions, or failed to insure the employee contributions were being transmitted to the plan."[2] Pan American executed an "Administrative Service Agreement" with Progix whereby Pan American would provide "nondiscretionary,

---

[1] Under 29 U.S.C. § 1002(34), a defined contribution plan is defined as:
> [A] pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's accounts.

Although plaintiffs to not specifically state the plan at issue in this case is a defined contribution plan, the plan they describe fits within section 1002(34)'s definition.

[2] Amended complaint, doc. 8, ¶ IX.

1

ministerial administrative services"[3] for the Plan. Despite the fact that the Service Agreement set forth that Pan American would not be "characterized as a fiduciary with respect to the Plan,"[4] plaintiffs allege that Pan American engaged in discretionary acts which conferred fiduciary status upon it.[5]  Plaintiffs assert that Pan American breached its fiduciary duty to the Plan when it failed to notify the plaintiffs that their contributions were not being forwarded to the Plan and made a unilateral decision to freeze Plan assets, thus preventing plaintiffs "from withdrawing their money, reinvesting their money, or protecting their investments from loses in the stock market."[6]

Plaintiffs moved this Court to certify a class under Federal Rule of Civil Procedure 23(a) and (b)(3) and sought to represent

> [A]ll employees/participants in the Plan who were damaged and/or suffered losses as a result of Williamson's failure to either transmit the employee contributions to the plan or to take any efforts to insure their transmission to the Plan and by Pan Am's failure to notify Named Plaintiffs and similarly situated persons their Plan contributions were not being forwarded to the Plan, and by Pan Am's action to freeze all of the assets of the Plan which caused severe damage to Named Plaintiffs and all similarly situated persons.[7]

---

[3] Administrative Service Agreement, Exhibit A, doc. 37-4, page 3.
[4] *Id*.
[5] Specifically, plaintiffs assert in their memorandum in support of class certification:
> Fiduciary status is defined "in functional terms of control and authority over the plan." Plaintiffs contend that in deciding to freeze plan assets, Pan American exceeded the administrative duties in its contract and exercised the sort of discretionary action that "is the benchmark for fiduciary status under ERISA." Further, because ERISA imposes fiduciary obligations on anyone that "deals with plan assets," Pan American's actions in failing to safeguard the Progix plan assets once it realized that irregularities were occurring also supports its fiduciary status.

Doc. 37-2, page 5 (internal citations omitted).
[6] Amended complaint, doc. 8, ¶ XIII.
[7] *Id*. at ¶ XVI.

In a ruling issued on June 15, 2009, this Court denied plaintiffs' motion for certification.[8] While we found that the requirements of Federal Rule of Civil Procedure 23(a) were satisfied, we held that individualized issues predominated and precluded certification under 23(b)(3).[9]

Specifically, this Court found that establishing which Plan participants would be included in plaintiffs' proposed putative class would require threshold individualized determinations. Under the proposed definition, only participants in the Plan who were damaged and/or suffered losses would be members of the class. It seemed to this Court that such a determination of damage or loss would be individual to each putative class member. Further, while plaintiffs acknowledged that some Plan participants may have never desired or attempted to move or withdraw Plan assets during the alleged freeze, they argued that the "mere fact that one participant did not attempt to transfer or withdraw funds is irrelevant if that participant can demonstrate that the reason the participant did not try to do so was that the participant was aware that the asset freeze had been implemented…"[10] We noted that such a showing by a Plan participant would also require individualized analysis.

Additionally, this Court found that individualized damage calculations precluded class certification. While plaintiffs asserted that damage calculations would not be difficult and would "largely consist of determining the losses the few defined funds in the Progix plan sustained during the prior of time the freeze was in effect, and the

---

[8] Doc. 50.
[9] Plaintiffs only sought certification as a (b)(3) class.
[10] Doc. 46, page 4.

alternative investment returns available had the funds been unfrozen,"[11] we reasoned that "individualized proof of what type of fund that class member would have invested in during the freeze would be necessary."[12]

## Analysis

It is well established that district courts have discretionary authority to reconsider interlocutory rulings.[13] There are three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice.[14]

Plaintiffs based their motion for reconsideration on the asserted need to correct clear error. They suggest a generalized method of calculating damages and, for the first time, suggest to this Court the possibility of a bifurcated trial. In opposition, Pan American asserts that plaintiffs' arguments as to damage calculations and bifurcation should have presented in plaintiffs' original motion for certification or reply memorandum. Pan American asserts that to consider these arguments at this stage would be to allow plaintiffs' a "second bite at the apple" so to speak. It is true that "litigants are expected to present their strongest case when the matter is first considered" and that "[a] motion to reconsider based on recycled arguments only serves to waste the resources of the court."[15] However, this Court finds that consideration of plaintiffs' arguments serves to ensure we have reached as thorough a decision as possible.

---

[11] Doc. 46, page 8.
[12] Ruling, doc. 50, page 14.
[13] *See* Xerox Corp. v. Genmoora Corp., 888 F.2d 345 (5th Cir. 1989).
[14] Shields v. Shields, 120 F.R.D. 123, 126 (D. Colo. 1988).
[15] State of Louisiana et al. v. Sprint Communications, Co., 899 F.Supp. 282, 284 (M.D. La. 1995).

In their Amended Complaint, plaintiffs state that this case presents issues arising under ERISA, 29 U.S.C. § 1132.[16] While plaintiffs do not specify under which section of § 1132 their claims fall, they do repeatedly cite defendants' alleged breach of fiduciary duty. It seems to this Court that plaintiffs' claims potentially sound in either § 1132(a)(2) or (a)(3); however, given the relief sought by plaintiffs against Pan American as well as their reliance on the language of 29 U.S.C. § 1109(a),[17] this Court holds that plaintiffs' claims of breach of fiduciary duty against Pan American are based on § 1132 (a)(2).[18]

In *LaRue v. DeWolff, Boberg & Associates, Inc.*, the Supreme Court held that while § 1132(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account."[19] Thus, the plaintiff, a participant in a defined contribution plan, had a remedy under § 1132(a)(2) for

---

[16] Doc. 8, page 3, ¶ III.
[17] Doc. 51-2, page 2 n.2.
[18] 29 U.S.C. § 1132(a)(2) empowers a participant to bring a civil action "for appropriate relief under section 1109 of this title." Section 1109 in turn imposes liability for breach of fiduciary duty:
> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary….

29 U.S.C. § 1132(a)(3) empowers a participant "(A) to enjoin any act or practice which violates any provision of this subsection or the terms of the plan, or (B) to obtain other appropriate equitable relief….". With regard to plaintiffs' claims against Pan American, the Amended Complaint seeks both the "value of all employee and employer contributions that were frozen and diminished in value as a result of the wrongful seizure of assets" as well as "[i]nterest on all employee and employer contributions wrongfully withheld and frozen by Defendants." Doc. 8, page 8, ¶ XXI. Thus, it appears that plaintiffs seek compensatory money damages from Pan American. The Fifth Circuit, following the United States Supreme Court decision of *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993), has held that such damages are not available under (a)(3). *See* Rogers v. Hartford Life and Accident Ins. Co., 167 F.3d 933, 944 (5th Cir. 1999) ("compensatory damages, whether extra-contractual or not, are not recoverable under ERISA."); Amschwand v. Spherion Corp., 505 F.3d 342 (5th Cir. 2007).
[19] 128 S.Ct. 1020, 1025 (2008).

defendant's alleged breach of fiduciary duty based on defendant's alleged failure to make certain changes requested by plaintiff to his individual retirement account.[20]

Based on *LaRue* then, a participant in a defined contribution plan alleging breach of fiduciary duty can bring a suit either in a representational capacity on behalf of the plan in order to recover losses to the plan or may bring suit in an individual capacity to recover losses to his individual account. Plaintiffs in this case do not assert they are bringing their claims against Pan American in a representational capacity, nor do they assert that any damages potentially recovered would inure to the Plan rather than their individual accounts.[21] While they do allege Pan American froze Plan assets on a Plan-wide basis, their proposed class definition does not include all Plan participants, rather it is limited to those participants who were "damaged and/or suffered losses…."[22] As plaintiffs themselves state in their motion for reconsideration, "the only issues allegedly individual in nature are whether and to what degree *the individual plan members* were

---

[20] Prior to *LaRue*, many courts only allowed a plaintiff to bring suit under §1132(a)(2) in a representational capacity on behalf of the plan. *See e.g.* Matassarin v. Lynch, 174 F.3d 549, 566 (5th Cir. 1999) (explaining that "§ 1109 limits claims to those that inure to the benefit of the plan as a whole and not to the benefit only of individual plan beneficiaries."); *Nechis v. Oxford Health Plans, Inc.*, 328 F.Supp.2d 469, 477 (S.D.N.Y. 2004) (dismissing plaintiff's claim under section (a)(2) because the "complaint's factual allegations focus on harm suffered by the putative class members….This alleged harm can only be redressed by awarding relief to those individual plaintiffs who have suffered a reduction of their benefits….Because she fails to allege injury to the plan, as opposed to herself and other class members, [plaintiff] has failed to plead a viable § 502(a)(2) claim.").
This requirement was based on the Supreme Court's opinion in *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985). In *Russell*, the Court analyzed the language of 29 U.S.C. § 1109(a) and emphasized that under the statutory language a plan fiduciary was required "to make good *to such plan* any losses *to the plan*…and to restore *to such plan* any profits of such fiduciary which have been made through use of assets *of the plan*…." *Id*. at 140. The Court concluded that the statute "makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Id*. at 141. The Court further noted that it believed Congress' intent was "actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole." *Id*. at n.9.
[21] In plaintiffs' Amended Complaint, they assert that the "[m]ethod of calculating damages sustained *by each Plan member*" is a common issue of fact and law. Doc. 8, ¶XVIII.
[22] Amended Complaint, Doc. 8, page 6.

6

damaged."[23] Based on the damages plaintiffs' seek, their proposed class definition, and their arguments in support of reconsideration, this Court finds that plaintiffs are bringing suit in their individual capacities.

In this Court's denial of plaintiffs' motion for class certification, we found that individualized determinations of damages would be necessary. In their motion for reconsideration, plaintiffs assert that this finding was in error and argue that damages are subject to mechanical calculation. Plaintiffs argue that "the court should compare the amount earned on the plaintiffs' investments with what those funds could have earned in other investments."[24] Plaintiffs further assert that "in determining the investments to which plaintiffs' returns should be compared, if 'several alternative investment strategies were equally plausible, the court should presume that the funds would have been used in the most profitable of these.'"[25] In support of this method of damage calculation, plaintiffs cite a number of cases in which this "best investment strategy" method was used. However, in those cases, the method was used to determine loss *to the plan* rather than loss to individual plan participants.[26] Here, plaintiffs allege loss to their individual accounts rather than to the Plan as a whole.

---

[23] Doc. 51-2, page 6 (emphasis added).
[24] Doc. 51-2, page 2.
[25] Doc. 51-2, page 2-3 (quoting *Evans v. Akers*, 534 F.3d 65, 74 (1st Cir. 2008)).
[26] Donovan v. Bierworth, 754 F.2d 1049, 1057 (2d Cir. 1985) ("The question of loss to the Plan…requires a comparison between the actual performance of the Plan and the performance that otherwise would have taken place."); Evans v. Akers, 534 F.3d 65, 74 (1st Cir. 2008) ("Losses to a plan from breaches of the duty of prudence may be ascertained, with the help of expert analysis, by comparing the performance of the imprudent investments with the performance of a prudently invested portfolio."); Graden v. Conexant Systems Inc., 496 F.3d 291, 295 & 301 (3d Cir. 2007) (When party brings suit for breach of fiduciary duty under § 1132(a)(2) on behalf of the plan, "the measure of damages is the amount that affected accounts would have earned if prudently invested.").

Because plaintiffs' class would require damages to be calculated on an individual rather than plan-wide basis, this Court finds the cases cited by plaintiffs to be distinguishable.[27]

Plaintiffs alternatively argue that "a partial class action on liability with bifurcated damage trials would be appropriate, particularly given the nature of this litigation and the impracticability of individual lawsuits."[28] Plaintiffs cite the various geographic locations of putative class members, argue that small damage awards for individual plaintiffs would be insufficient to justify individual suits, and that without class certification there would be a possibility of inconsistent outcomes on liability issues as well as a diminished chance of settlement. Pan American points out that ERISA allows a court in its discretion to award attorney fees to either party[29] and therefore individual suits would be feasible.

Even with bifurcation of liability and damage issues, this Court still finds that plaintiffs' proposed class definition requires individualized determinations of the threshold issue of membership in the class.[30] Bifurcation would not solve the

---

[27] The court notes that other courts, under circumstances different from this case, have certified classes alleging § 1132(a)(2) violations post-*LaRue*. However, it appears that those cases, the plaintiff continues to seek recovery on a plan-wide basis on behalf of the plan. For example, in *George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338, 349 (N.D. Ill. 2008), plaintiffs sought to recover losses allegedly suffered by the plan on a plan-wide basis. The court certified the class under F.R.C.P. 23(b)(1) and noted with respect to typicality:
> How that recovery will be allocated by the Plan to different class members is not a question that affects class certification. Typicality is measured by reference to defendants' actions toward the Plan as a whole, not with respect to individual defenses that might be raised with respect to how participants later may share in a recovery by the Plan.

*See also* Kanawi v. Bechtel Corp., 254 F.R.D. 102, 109 (N.D. Cal. 2008). The court notes that class certification in this case would be more likely if plaintiffs brought their claims on behalf of the Plan in a representational capacity and included all Plan members in their proposed class definition such that this Court would not have to engage in threshold determinations of individual damage and/or loss to ascertain which Plan members should be included in the putative class.

[28] Doc. 51-2, page 6.

[29] 29 U.S.C. § 1132(g)(1).

[30] This Court is also concerned with potential notice problems if this class action is certified under Federal Rule of Civil Procedure 23(b)(3). A (b)(3) class must be given the "best notice practicable" to all members. FRCP 23(c)(2)(B);

manageability problems this Court has previously outlined that would arise in trying to determine which individual Plan participants were "damaged and/or injured" by the alleged breach.[31]

## Conclusion

For the reasons discussed above, plaintiffs' motion for reconsideration (doc. 51) is DENIED.

Signed in Baton Rouge, Louisiana, on July 30, 2009.

 _____
 **JUDGE JAMES J. BRADY**
 **UNITED STATES DISTRICT COURT**
 **MIDDLE DISTRICT OF LOUISIANA**

---

Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 177 (1974). It is unclear to this Court how members of the putative class would be identified for purposes of notification without engaging in individual determinations of damage.

[31] Plaintiffs also argue that this Court should consider establishing subclasses. Plaintiffs suggest two subclasses; one for those Plan participants who "tried to reallocate or withdraw their funds, but could not do so because of the freeze" and a second made up of individuals who "did not realize a freeze was in place and did not have the intent to change their investment options." Doc. 51-2, page 5. Based on plaintiffs' proposed class definition, it seems to this Court that the second subclass plaintiffs propose would not be included in the proposed class definition in the first place. Thus, we find that plaintiffs' proposed subclasses do not help the manageability problems of concern to this Court.