UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

SONYA TURNER, ET AL.

VERSUS

LARRY TALBERT, ET AL.

CIVIL ACTION

NO. 04-450-JJB

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Pan American Life Insurance Company's, ("defendant"), motion for summary judgment. (Doc. 54). Plaintiffs, Sonya Turner, Vena Cormier, Wesley J. Nixon, Julie Constance, Charlotte Jourdan, Angie Malone, and John Shipman, filed an opposition. (Doc. 59). Defendant filed a reply. (Doc. 61). This Court's jurisdiction exists pursuant to 28 U.S.C. § 1331 *et seq.*  Oral argument with respect to this motion is not necessary.  For the following reasons, the Court DENIES defendant's motion for summary judgment.

**Background**

Plaintiffs were participants in a defined contribution 401(k) savings plan ("the Plan") under the Employee Retirement Income Security Act of 1974 ("ERISA").  The Plan was offered to plaintiffs through their employer, Progix, Inc. Defendant executed an administrative service agreement ("Service Agreement") with Progix whereby defendant would provide "nondiscretionary, ministerial

1

administrative services" for the Plan.[1]   Plaintiffs allege that the Plan's named trustee, "either stopped transmitting the employee contributions, or failed to insure the employee contributions were being transmitted to the plan."[2]   Despite the fact that the Service Agreement set forth that defendant was not a Plan fiduciary,[3] plaintiffs allege that defendant engaged in discretionary acts, which conferred fiduciary status upon it.   Specifically, plaintiffs argue that defendant became a fiduciary when it allegedly froze Plan assets and failed to notify Plan participants that contributions were being deposited into the Plan.   Plaintiffs also argue that defendant's failure to notify and freezing of Plan assets breached its fiduciary duty.   Plaintiffs argue that these breaches caused damage to plaintiffs by preventing them from withdrawing their money, reinvesting their money, or protecting their investments from losses in the stock market.[4]

## Summary Judgment Standard

Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.[5]   When the burden at trial rests on the non-movant, as it does here, the movant need only demonstrate that the record lacks

---

[1] Doc. 37-4 at 3.
[2] Doc. 8 ¶ IX.
[3] *Id.*
[4] Doc. 8 ¶ XIII.
[5] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

2

sufficient evidentiary support for the non-movant's case.[6]  The movant may do so by showing that the evidence is insufficient to prove the existence of one or more elements essential to the non-movant's case.[7]

Although the Court considers any disputed or unsettled facts in the light most favorable to plaintiff, he may not merely rest on allegations set forth in his pleadings.  Instead, plaintiff must show that there is a genuine issue for trial by presenting evidence of specific facts.[8]  Conclusory allegations and unsubstantiated assertions will not satisfy plaintiff's burden.[9]  If, once plaintiff has been given the opportunity to raise a genuine factual issue, no reasonable juror could find for the plaintiff, summary judgment will be granted.[10]

## Analysis

To establish a prima facie case for breach of fiduciary duty under ERISA, plaintiffs must establish that: (1) defendant was a Plan fiduciary; (2) defendant breached a fiduciary duty owed to plaintiffs as a result of defendant's fiduciary status; and (3) the breach caused damage to plaintiffs.[11]

---

[6] *See id.*
[7] *Id.*
[8] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).
[9] *See Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139-40 (5th Cir. 1996).
[10] *See Celotex,* 477 U.S. at 322; *see also* Fed. Rule Civ. P. 56(c).
[11] ERISA § 502, 29 U.S.C. § 1132(a)(2).

**Fiduciary Status**

Fiduciary status is defined in functional terms by looking to a party's control and authority over the plan.[12]   Courts look to both the actual terms of plan documents and the parties' actions to determine control and authority.  Here, the Court finds that defendant assumed no fiduciary status under the actual terms of the Service Agreement.  However, the Court finds that a genuine issue of fact exists about whether defendant froze plan assets and assumed fiduciary status.

Did the terms of the Service Agreement confer fiduciary status?

The first issue is whether the express terms of the Service Agreement make defendant a fiduciary.  Plaintiffs argue that the terms of the Service Agreement manifest defendant's intention to provide legal and investment advice, which effectively creates a fiduciary relationship.[13]  Specifically, plaintiffs cite defendant's promises to provide prototype plan documents and qualification forms for review as well as advice on compliance procedures and disclosures.[14]

Defendant counters that the Service Agreement expressly limits its role with respect to the Plan to "performance of nondiscretionary, ministerial administrative services."[15]  Defendant further argues that the Service Agreement provides that the performance of these services "shall not cause [it] to be

---

[12] *See, e.g., Estate of Weeks v. Advance Stores Co.*, 32 Employee Benefits Cas. (BNA) 2768 (4th Cir. 2004) (holding that the determination of whether a person qualifies as an ERISA fiduciary is based on the person's job activities rather than job title); *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812 (2d Cir. 1987) (stating, "[W]hether or not an individual or entity is an ERISA fiduciary must be determined by focusing on the function performed, rather than on the title held.").

[13] Doc. 37-4 at 6.

[14] *Id.*

[15] Doc. 54-2 at 8.

4

characterized as a fiduciary with respect to the plan."[16]   Defendant asserts that the services it provided to the Plan did not result in discretionary control or authority over plan assets, and that all such control and authority rested in the Plan trustees and administrator.[17]

ERISA fiduciary status is a mixed question of law and fact.[18] As previously stated, courts employ a functional test in determining ERISA fiduciary status.[19]   Congress has determined that discretionary authority or control over plan assets, management, or investment policy defines the parameters of fiduciary status.[20]  Section 1002(21)(A) states,

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

The Fifth Circuit provided further guidance regarding discretionary authority in *Schloegel v. Boswell.*[21]   In *Schloegel*, a participant in an ERISA-covered profit sharing plan brought suit alleging breaches of fiduciary duties

---

[16] *Id.*
[17] *Id.*
[18] *Reich v. Lancaster*, 55 F.3d 1034, 1044 (5th Cir. 1995).
[19] *See Donovan v. Mercer*, 747 F.2d 304, 308 (5th Cir. 1984) (citing ERISA's legislative history for the proposition that "the definition [of fiduciary] includes persons who have authority and responsibility with respect to the matter in question, regardless of their formal title.")
[20] 29 U.S.C. § 1002(21)(A).
[21] 994 F.2d 266 (5th Cir. 1993).

against an insurance agent who provided the plan with consulting services.[22]
The court held that "mere influence over the trustee's investment decisions . . . is
not effective control over plan assets."[23]  The court found that the defendant was
not a fiduciary because he did not exercise authority or control over the Plan
such that Plan trustees "relinquish[ed] [their] independent discretion in investing
the plan's funds."[24]  The court cited United States Supreme Court, as well as
Seventh Circuit, authority for the proposition that professionals must transcend
the ordinary functions of their job description to cross the line from advisor to
fiduciary.[25]

    Here, plaintiffs argue that regardless of any disclaimer in the Service
Agreement, the functions assigned to defendant under the Agreement required
defendant to exercise discretionary authority over plan assets by providing:
advice regarding ERISA § 404(c) compliance, a prototype plan document, plan
qualification forms, and legal advice as to federal disclosure requirements.[26]
Plaintiffs argue that the actual terms of the Service Agreement thus evince
defendant's intent to offer investment advice and exercise control over Plan
functions to the extent that it becomes a fiduciary.

---

[22] *Id.* at 270.
[23] *Id.* at 271.
[24] *Id.*
[25] *Id.* (citing *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 537 (7th Cir. 1991) and *Mertens v. Hewitt Assoc.*, 508 U.S. 248 (1993).
[26] Doc. 59 at 9.

However, as plaintiffs admit, the Service Agreement includes language that expressly contradicts such intent.[27]  In addition to describing the ministerial functions of drawing up prototype documents and qualification forms,[28] the Service Agreement unequivocally states that defendant is not a Plan Administrator, does not "exercise any discretionary authority or discretionary control respecting management of the Plan," nor does defendant have any authority to do so.[29]  The Service Agreement instead provides that "[a]ll such control, responsibility and authority resides in the Plan Administrator or other persons specified in the Plan."[30]  Moreover, the Service Agreement states that defendant will provide only "general information" about ERISA § 404(c) compliance, and advises the Plan Administrators that it should seek outside legal advice regarding compliance technicalities.[31]  Plaintiffs fail to provide any evidence beyond mere allegation to rebut defendant's argument that it did not intend to assume fiduciary status in the actual terms of the Service Agreement. Because on summary judgment the moving party may meet its burden by

---

[27] *See* Doc 37-4 ¶ 10.

[28] *See, e.g., CSA 401(K) Plan v. Pension Prof'ls, Inc.*, 195 F.3d 1135, 1139 n.2 (9th Cir. 1999) (providing that "persons who perform the following administrative functions will not be deemed a fiduciary with respect to an employee benefit plan: (1) Applications of rules determining eligibility for participation or benefits; (2) Calculation of services and compensation credits for benefits; (3) Preparation of employee communications material; (4) Maintenance of participant' service and employment records; (5) Preparation of reports required by governmental agencies; (6) Calculation of benefits; (7) Orientation of new participants and advising participants of their rights and the options under the plan; (8) Collection of contributions and application of contributions as provided in the plan; (9) Preparation of reports concerning participants' benefits; (10) Processing of claims; (11) Making recommendations to others for decisions with respect to plan administration.") (internal citation omitted).

[29] *See id.* ¶ 7.

[30] *See id.* ¶ 7 and at 5 (including signatures of Larry A. Talbert and Mary C. Nobles as Employer/Trustee and Plan Administrator).

[31] *See id.* ¶ 10.

pointing to the non-moving party's failure to produce evidence to support its case,[32] the Court finds that the terms of the Service Agreement do not establish a fiduciary relationship.

Did Defendant's alleged freeze of Plan Assets create fiduciary status?

The next issue is whether defendant took any actions regarding Plan assets that could result in fiduciary status. Section 1002(21)(A)'s functional definition of a fiduciary includes any entity that exercises "discretionary authority or discretionary control" respecting management of Plan Assets.[33] This discretionary authority and control must amount to actual decision making power in order to confer fiduciary status.[34]

Plaintiffs argue that defendant became a fiduciary when it allegedly froze Plan assets sometime around August 2002.[35] Plaintiffs argue that neither the Service Agreement nor any other Plan document entitles defendant to freeze assets, thus the unilateral freeze was discretionary and resulted in an assumption of fiduciary duty in which defendant became protector of participants' contributions.[36] Defendant counters that plaintiffs do not produce sufficient evidence to show that the freeze ever took place.[37] In contrast, defendant points to Plan summary statements showing participant account activity

---

[32] *See Boudreaux v. Swift Transp. Co.,* 402 F.3d 536, 544 (5th Cir. 2005).
[33] *See Reich v. Lancaster,* 55 F. 3d 1034, 1048 (5th Cir. 1995).
[34] *Id.* at 1049.
[35] Doc. 59 at 9, 11.
[36] *Id.*
[37] Doc. 61 at 3-6, 8.

contemporaneous with the alleged freeze.[38]   Defendant claims that plaintiffs' reliance on self-serving deposition testimony and hearsay evidence of the freeze are not enough to overcome documentary evidence, such as the Plan summary statements, that contradict the freeze.[39]   Finally, defendant refers again to the language of the Service Agreement expressly disclaiming fiduciary responsibility for its "nondiscretionary and ministerial" services.[40]

To support its contention that the freeze never took place, defendant points to several entries in the Plan summary statements showing account activity during the same time as the alleged freeze.[41]   Defendant lists $1137.40 in transfers between accounts and $53,489.50 in "Loan Fund" withdrawals during the October 2002 – December 2002 quarter.[42]   Notably, however, none of this activity includes transactions involving the plaintiff's accounts.   Defendant cites plaintiffs' depositions confirming that plaintiffs conducted no account activity during the alleged freeze period.[43]   Defendant uses plaintiffs' statements that they did not intend or attempt to access their accounts for the proposition that the accounts were not frozen.[44]   Defendant also claims that a Plan summary statement reflecting completed transfers in participant accounts in September and November 2002 rebuts the freeze allegation.[45]   However, neither the

---

[38] *Id.* at 4-5.
[39] *Id.* at 4.
[40] *Id.* at 7.
[41] Doc. 61-2.
[42] *Id.* at 5.
[43] *See* Doc. 54-2 at 15.
[44] *Id.*
[45] *See* Doc. 61 at 5-6.

plaintiffs' deposition testimony nor the Plan summary statements conclusively proves that plaintiffs had unfettered access to their Plan accounts.

Defendant cites case law for the proposition that self-serving deposition testimony will not create a genuine dispute of material fact for summary judgment purposes.[46]   Although it is true that unsupported self-serving statements are inadequate to overcome the summary judgment standard,[47] the plaintiffs produce other corroborating evidence.  Specifically, plaintiffs offer an email from a non-plaintiff Plan participant to the Plan Administrator discussing possible fixes for the alleged freeze.[48]  Coupled with plaintiffs' consistent deposition testimony about the freeze, this evidence is sufficient to defeat summary judgment.

Therefore, because the Court must view unsettled and disputed facts in the light most favorable to plaintiffs, summary judgment regarding whether defendant's alleged freeze of plaintiffs Plan accounts conferred fiduciary status is not proper.

### **Breach of Fiduciary Duty**

The next issue is whether defendant breached their fiduciary duty, assuming such duty existed.  Plaintiffs allege the defendant breached its fiduciary duty in two ways: (1) by failing to notify plaintiffs that their contributions were not forwarded to the plan, [49] and (2) by the aforementioned asset freeze.[50]

---

[46] Doc. 61 at 2-3.
[47] *Vais Arms, Inc. v. George Vais*, 383 F.3d 287 (5th Cir.2004).
[48] Doc. 38-14.
[49] Doc. 8 ¶ XII.

Failure to Notify

Plaintiffs argue that defendant's alleged fiduciary status entailed the duty to act in the best interests of plan participants.   Plaintiffs further argue that defendant's failure to notify them that their contributions were not being forwarded to the Plan breached that duty. [51]

Defendant counters that the Service Agreement allocated notification duties to the Plan Administrator, not to defendant, and thus defendant had no duty to notify.[52]   In support, defendant cites several circuit and district court cases holding that the plain language of the plan documents is the first step in determining the duties of the various fiduciaries.[53]   For example, in *Plumb v. Fluid Pump Serv., Inc.*, the Seventh Circuit held that an insurer cannot be held liable for failing to notify plan participants of coverage cancellation when nothing in the plan documents dictates such responsibility unless the insurer does something to voluntarily assume such a duty.[54]

Similarly, here, nothing in the Plan documents confers notification responsibility on defendant.   As stated above, that duty rests with the Plan Investment Administrator.   Moreover, even if defendant assumed fiduciary status and the freeze constitutes defendant's assumption of fiduciary status, nothing in the freeze indicates that this status carries with it the duty to notify.   A person is a

---

[50] *Id.* ¶ XII.
[51] Doc. 59 at 12.
[52] Doc. 54-2 at 13 (citing doc. 45-2 at 7).
[53] *See* Doc. 54-2 at 12-14.
[54] 124 F.3d 849, 854-55 (7th Cir. 1997).

fiduciary only regarding those aspects of the plan over which he exercises authority or control.[55]   Consequently, as in *Plumb*, defendant cannot be held to have authority or control over an activity solely because it was not prohibited from conducting such activity.[56]

Defendant further argues that even if it did owe a duty to provide notice, it met that obligation by sending out individualized account statements to plaintiffs in accordance with its duties under the Service Agreement.[57]   The Court finds this argument persuasive.   Defendant asserts, and plaintiffs fail to rebut, that it sent quarterly account statements fully disclosing all Plan account activity and balances on a quarterly basis.[58]   These account statements reflected participant transactions and balances during the time plaintiffs allege that their contributions were not reaching the Plan.   It is an uncontested fact that plaintiffs received these statements.[59]   Therefore, the Court finds that defendant did not breach its duty by failing to notify.

Freeze of Assets

Plaintiffs' second breach claim focuses on defendant's alleged freeze of Plan assets.   The breach analysis is essentially the same as the freeze analysis discussed above under fiduciary status.   Consequently, because whether the

---

[55] *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enter., Inc.*, 793 F.2d 1456, 1459-60 (5th Cir. 1986).
[56] *See Plumb*, 124 F.3d at 854-55.
[57] Doc. 54-2 at 12.
[58] *Id.* at 12.
[59] *Id.*

freeze occurred is a disputed fact, summary judgment as to whether the freeze constituted a breach of fiduciary duty is not proper.

## Causation and Damages

Defendant argues that plaintiffs cannot show that any of defendant's activities caused damage to plaintiffs.[60]   However, defendant's argument rests solely on their contention that the freeze did not occur.  Plaintiffs counter by arguing that the alleged freeze prevented them from making investment changes in their Plan accounts.[61]  Plaintiffs argue that damage calculations can be based on comparisons between their planned investment strategies and how those strategies would have changed absent the freeze.[62]

Therefore, because plaintiffs' provided the Court with sufficient evidence regarding the freeze and losses to their accounts if the freeze did occur, summary judgment as to causation and damages is not proper.

---

[60] *See* Doc. 54-2 at 19-23.   Defendant argues against causation and damage on several grounds. However, the only ground that is still actively contested by plaintiff and that has not been dismissed on summary judgment is defendant's argument based on the alleged freeze.  Therefore, the Court limits the causation and damage discussion to the freeze.
[61] Doc. 59 at 12.
[62] *See id.* at 14.   *See also Evans v. Akers*, 534 F.3d 65, 74 (1st Cir. 2008) (stating that damage calculations in ERISA actions need not be precise at the initial stages of the proceedings, and can be estimated by comparing the performance of the imprudent investments with the performance of a prudently invested portfolio).

13

## <u>Conclusion</u>

For the reasons discussed above, the Court finds that the actual terms of the Plan did not make defendant a fiduciary.   The Court also finds that defendant's failure to notify did not breach a fiduciary duty, if one exists. However, defendant's motion for summary judgment is DENIED.

Signed in Baton Rouge, Louisiana, this 25th day of September, 2009

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

14